Signed: May 23, 2011

_____
**EDWARD D. JELLEN**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    No. 10-40297-EDJ
                                         Adv. No. 10-04085
DOYLE D. HEATON and
MARY K. HEATON,

_____Debtors.___/

REGAL FINANCIAL BANK,

                    Plaintiff,
vs.

DOYLE D. HEATON and
MARY K. HEATON,

_____Defendants.___/

<u>DECISION</u>

     Plaintiff Regal Financial Bank ("Regal") filed the above-
captioned adversary proceeding against debtors Doyle D. Heaton and
Mary K. Heaton (the "Debtors"), defendants herein, seeking to render
nondischargeable a debt evidenced by two prebankruptcy documents
entitled "Commercial Guaranty" that the Debtors had executed in
Regal's favor.  (The two documents, which contain identical
provisions, are hereinafter referred to as the "Commercial
Guaranties.")  The Debtors were the prevailing parties in the

Decision

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
1300 Clay Street (2d fl.)
Oakland, CA. 94612

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
1300 Clay Street (2d fl.)
Oakland, CA. 94612

adversary proceeding, and as such, have now moved for an award of attorney's fees against Regal pursuant to the attorney's fees clause in the Commercial Guaranties.

Regal disputes liability, and contends that its nondischargeability action was in tort, not contract, such that the attorney's fees clause in the Commercial Guaranties is irrelevant. Regal further contends that it may setoff any award of attorney's fees in favor of the Debtors against the Debtors' contractual debt to Regal under the Commercial Guaranties.

The court rejects Regal's defenses, and will award attorneys fees to the Debtors as they request.

A.  Background

The background of the present dispute is set forth in this court's Decision: Cross-motion for Leave to Amend Complaint filed herein November 18, 2010.  In short, prior to the filing of the petition herein, the Debtors were members of a company called Antinori Development, LLC ("Antinori"), which had applied to Regal for certain financing.  On March 5, 2008, the Debtors signed a Commercial Guaranty covering Antinori's debt to Regal.  Regal renewed the credit to Antinori in March of 2009.  After the renewal, on May 7, 2009, the Debtors signed a new Commercial Guaranty in the same form covering the renewed loan.

On January 11, 2010, the Debtors filed a petition under chapter 11 of the Bankruptcy Code.  Thereafter, Regal commenced an adversary proceeding against the Debtors alleging that it renewed the loan to Antinori in reliance on certain alleged fraudulent representations

Decision                                        2

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
1300 Clay Street (2d fl.)
Oakland, CA. 94612

by the Debtors as to their financial condition.  The adversary proceeding sought to render the Debtors' debt to Regal under the Commercial Guaranties nondischargeable under the fraud exceptions to dischargeability provided by Bankruptcy Code § 523(a)(2)(A) and (B)[1] and the willful and malicious injury exception provided by § 523(a)(6).[2]

The court granted a motion by the Debtors for summary judgment under Fed.R.Bankr.P. 56 and Fed.R.Bankr.P. 7056 on the claims Regal alleged in its complaint because, among other things, Regal renewed the loan to Antinori before it had obtained the Debtor's new Commercial Guaranty and the financial information the Debtors

---

[1]Bankruptcy Code § 523(a)(2)(A) and (B) provides:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
(B) use of a statement in writing--
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive . . .

[2]Regal abandoned its claims under Bankruptcy Code § 523(a)(6) by not opposing the Debtors' motion for summary judgment.

Decision                                3

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
1300 Clay Street (2d fl.)
Oakland, CA. 94612

1  allegedly supplied Regal in connection therewith.

2      Regal conceded that the Debtors' were entitled to summary

3  judgment, but sought leave to amend its complaint to allege that it

4  had extended credit to Antinori in reliance on certain financial

5  information the Debtors had provided Regal back in 2007.  Based on

6  Fed.R.Civ.P. 15, applicable in bankruptcy cases via Fed.R.Bankr.P.

7  7015, the court denied Regal's motion for leave to amend, and

8  ultimately entered judgment in the adversary proceeding in favor of

9  the Debtors.

10      Debtors' present motion for attorney's fees followed.

11 B. Discussion

12      1.  Are the Debtors Entitled to an Award of Attorney's Fees?

13      The parties agree that attorney's fees are generally not

14 awardable to the prevailing party in litigation except by contract

15 or statute.  Alyseska Pipeline Serv. Co. v. Wilderness Soc'y, 421

16 U.S. 240, 257, 95 S.Ct. 1612 (1975).  The parties further agree

17 that, here, the relevant contracts are the Commercial Guaranties,

18 and that by their terms, they are to be governed by the laws of the

19 State of Washington.

20      Both the March 5, 2008 and May 7, 2009 versions of the

21 Commercial Guaranties contained an attorney's fees clause reading as

22 follows:

23          Guarantor agrees to pay upon demand all of Lender's costs
            and expenses, including Lender's attorneys' fees and
24          Lender's legal expenses, incurred in connection with the
            enforcement of the Guaranty.. . . Costs and expenses
25          include Lender's attorneys' fees and legal expenses
            whether or not there is a lawsuit, including attorneys'
26          fees and legal expenses for bankruptcy proceedings

Decision                             4

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
1300 Clay Street (2d fl.)
Oakland, CA. 94612

1  (including efforts to modify or vacate any automatic stay
   or injunction), appeals, and any anticipated post-judgment
2  collection services.  Guarantor also shall pay all court
   costs and such additional fees as may be directed by the
3  court.

4  Although the Commercial Guaranties speak in terms of the guarantor

5  paying the lender's attorney's fees, Revised Code of Washington

6  ("RCW") 4.84.330 provides that if an attorney's fees clause in a

7  contract provides for an award of attorney's fees and costs to one

8  of the parties to enforce the provisions of such a contract, the

9  prevailing party is entitled to an award of attorney's fees and

10 costs even if such party is not the party specified in the

11 attorney's fees clause.[3]

12     Regal argues that its action, being one under Bankruptcy Code

13 § 523(a)(2)(A) and (B), was a fraud, not a contract, action, and

14 consequently, that no attorney's fees are allowable because no

15 applicable contract or statute provides for an attorney's fee

16 allowance in the tort context.

17     This argument fails.  In <u>Cohen v. de la Cruz</u>, 523 U.S. 213, 118

18 S.Ct. 1212 (1998), the Supreme Court held that a successful

19 plaintiff was entitled to judgment in an action under Bankruptcy

20 Code § 523(a)(2) for all liabilities arising from the debtor's

21

22     [3]RCW 4.84.330 provides: "In any action on a contract or
   lease entered into after September 21, 1977, where such contract
23 or lease specifically provides that attorney's fees and costs,
   which are incurred to enforce the provisions of such contract or
24 lease, shall be awarded to one of the parties, the prevailing
   party, whether he is the party specified in the contract or lease
25 or not, shall be entitled to reasonable attorney's fees in
   addition to costs and necessary disbursements."
26

Decision                                    5

fraud, including treble damages provided by the statute at issue, and attorney's fees. <u>Cohen</u>, 523 U.S. at 220-21, 118 S.Ct. at 1219.

Many courts, including the Ninth Circuit Bankruptcy Appellate Panel, have interpreted the mandate of <u>Cohen</u> to require an award of attorney's fees in any action under Bankruptcy Code § 523(a)(2) in which the successful plaintiff could have recovered attorney's fees in a nonbankruptcy court action. For example, in <u>In re Pham</u>, 250 B.R. 93 (9th Cir. BAP 2000), the plaintiff had issued the debtor a credit card, and after obtaining a default judgment of nondischargeability against the debtor grounded on Bankruptcy Code § 523(a)(2)(A), sought an award of attorney's fees. The bankruptcy court denied the award.

On appeal by the creditor, the BAP reversed and remanded, characterizing the issue as follows:

" . . . [the creditor] can recover <u>only</u> if attorney's fees may be awarded for litigating nondischargeability under § 523(a)(2)(A), rather than the underlying claim: the narrow legal issue is whether a creditor may recover attorney's fees via a contractual provision for successfully litigating nondischargeability." [Emphasis in original.]

<u>Pham</u>, 250 B.R. at 97.

Rejecting several Ninth Circuit cases that preceded <u>Cohen</u>, the BAP held in the affirmative, stating: "We agree that, after <u>Cohen</u>, the determinative question is whether the successful plaintiff could recover attorney's fees in a non-bankruptcy court." <u>Id.</u> at 99. The BAP therefore remanded the matter to the bankruptcy court to make a determination whether the cardmember agreement between the debtor and the creditor "would support an award of attorney's fees in a

Decision                                    6

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
1300 Clay Street (2d fl.)
Oakland, CA. 94612

1  fraud action based on that agreement." Id.

2      Many other courts have reached the same conclusion. See, e.g.,

3  In re Lutgen, 1999 WL 222605 (W.D.N.Y. 1999) (holding that the

4  creditor should be allowed attorney's fees for successfully

5  prosecuting an action under Bankruptcy Code § 523(a)(2) because the

6  check cashing agreement at issue contained an attorney's fees

7  clause) and cases collected therein at *2.  See also In re Moen, 238

8  B.R. 785, 795 (8th Cir. BAP 1999).

9      Regal contends, however, that under Washington law, its action

10  would be considered one in tort, not contract, such that neither

11  party would be entitled to an award of attorney's fees.

12      In contradiction of this contention, however, the court notes

13  that Regal's complaint herein alleges: "Both the Guaranty and the

14  New Guaranty contain attorney's fee clauses requiring the Heatons to

15  pay all of Regal's costs and expenses, including attorney's fees, in

16  enforcing guaranties." Complaint, paragraph 28.  Similarly, Regal's

17  prayer for relief requests an award of attorney's fees and costs for

18  the adversary proceeding.

19      In any event, the court rejects the argument.  The liability

20  that Regal sought to render nondischargeable was a contractual

21  liability arising under the Commercial Guaranties, not a tort

22  liability.  This is clear from the fact that the Debtors have no

23  debt to Regal other than the debt that arose under the Commercial

24  Guaranties.  Indeed, Regal's complaint herein prays for "an order

25  determining that the amount the Heatons owe to Regal on the Guaranty

26  and New Guaranty are nondischargeable in the Bankruptcy case . . . "

Decision                            7

1   [emphasis added]. Complaint, page 6.

2       Moreover, the Supreme Court of Washington has adopted a two-
3 part test to determine whether an action is "on a contract" for
4 purposes of an award of attorney's fees: "Under Washington law, for
5 purposes of a contractual attorneys' fee provision, an action is on
6 a contract if the action arose out of the contract and if the
7 contract is central to the dispute." Seattle-First Nat'l Bank v.
8 Washington Ins. Guar. Ass'n, 116 Wash.2d 398, 413, 804 P.2d 1263,
9 1270 (1991).

10       In Brown v. Johnson, 109 Wash.App. 56, 34 P.3d 1233 (2001), the
11 court applied this two-part test to hold that a purchaser who had
12 been the victim of misrepresentations by the seller of a home was
13 entitled to attorney's fees pursuant to the purchase and sale
14 agreement between the parties. Id. at 58-59. See also Tradewell
15 Group, Inc. v. Mavis, 71 Wash.App. 120, 130, 857 P.2d 1053 (1993).

16       Regal cites two Washington cases as authority to the contrary:
17 Norris v. Church & Co., Inc., 115 Wash.App. 511, 63 P.3d 153 (2003)
18 and Burbo v. Douglas, 125 Wash.App. 684, 106 P.3d 258 (2005).
19 Norris, however, is easily distinguishable from Brown. In Norris,
20 the court denied the prevailing plaintiffs' request for attorney's
21 fees because the plaintiffs did not sue the defendant for breach of
22 contract, but rather, for fraud. Norris, 63 P.3d at 156.

23       In Burbo, the court reversed a grant of summary judgment in
24 favor of the defendant, an owner-builder that had sold a residence
25 to the plaintiff. In doing so, the court opined that, on remand,
26 the prevailing party on the plaintiff's claims for breach of an

Decision         8

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
1300 Clay Street (2d fl.)
Oakland, CA. 94612

implied warranty of habitability would be entitled to an award of attorney's fees because the warranty was an implied term of the contract of sale. <u>Burbo</u>, 106 P.3d at 267. The court also opined, citing <u>Norris</u>, that attorney's fees would not be allowed to the prevailing party on the plaintiff's claim for fraudulent concealment because "[f]raudulent concealment sounds in tort, not contract." <u>Id.</u>

It may be reasonably argued that <u>Brown</u> and <u>Burbo</u> are in conflict. But even if true, nothing in <u>Norris</u> or <u>Burbo</u> is contrary to the two-part test articulated by the Washington Supreme Court in <u>Seattle-First Nat'l Bank</u> for determining when an action is "on a contract" under Washington law.

Here, it is clear that the language of the attorney's fees clause in the Commercial Guaranties encompassed the adversary proceeding, especially the language stating that the contracted for award of attorney's fees would include "attorney's fees and legal expenses for bankruptcy proceedings." It is equally clear, as amply demonstrated by Regal's Complaint against the Debtors as quoted above, that Regal's action against the Debtors "arose out of" the Commercial Guaranties, and that the Debtors' execution of the Commercial Guaranties was "central to the dispute."

The court therefore holds that the Debtors are entitled to an award of attorney's fees pursuant to the attorney's fee clause in the Commercial Guaranties and RCW 4.84.330.

2. <u>Setoff</u>

Regal argues that it may set off any liability it may have for

Decision                                    9

attorney's fees in the adversary proceeding against the Debtors'

debt on the Commercial Guaranties.  The court disagrees.

It is true that Bankruptcy Code § 553(a) preserves any right of

setoff that is valid under nonbankruptcy law.[4]  The defining

characteristics of setoff are that (a) the creditor holds a valid

and enforceable claim that arose prepetition, (b) the creditor owes

a valid and enforceable debt that arose prepetition, and (c) the

claim and debt are mutual.  5 Collier on Bankruptcy ¶ 553.01, at

553-6 (16th ed. 2011).  In order for countervailing debts to be

"mutual," they must be in the same right, between the same parties,

standing in the same capacity.  <u>Newbery Corp. v. Fireman's Fund Ins.</u>

<u>Co.</u>, 95 F.3d 1392, 1399 (1996); Collier ¶ 553.03[3], at 553-26 to

553-27.

In <u>Newbery</u>, the Ninth Circuit stated that "[t]he mutuality

requirement in bankruptcy cases should be strictly construed . . ."

<u>Id.</u>  The court explained

> [T]he mutuality requirement in bankruptcy should be
> strictly construed because setoffs run contrary to
> fundamental bankruptcy policies such as the equal
> treatment of creditors and the preservation of a
> reorganizing debtor's assets: As Congress recognized,
> setoffs work against both the goal of orderly
> reorganization and the fairness principle because they
> preserve serendipitous advantages accruing to creditors
> who happen to hold mutual obligations, thus disfavoring

---

[4]Bankruptcy Code § 553(a) provides, in relevant part:
"Except as otherwise provided ... this title does not affect any
right of a creditor to offset a mutual debt owing by such
creditor to the debtor that arose before the commencement of the
case ... against a claim of such creditor against the debtor that
arose before the commencement of the case...."

Decision                          10

other equally-deserving creditors and interrupting the
debtor's cash flow.

Id. at 1399.

Here, there is no mutuality.  The Debtors' debt to Regal arose

prepetition, and thus, became a claim against the Debtors'

bankruptcy estate upon the filing of the petition.  Subject to the

Debtors' performance under their confirmed chapter 11 plan, such

claim will be discharged pursuant to the provision of the Debtors'

confirmed chapter 11 plan and Bankruptcy Code § 1141(d).[5]  On the

other hand, Regal's debt for attorney's fees arose post-

confirmation, based on litigation that it commenced postpetition.

It follows that there is no mutuality.  See, e.g. In re Mohawk

Industries, Inc., 82 B.R. 174, 176 (Bankr. D. Mass. 1987) ("A

creditor is not permitted to setoff the debtor's prepetition

obligation to him against his obligation to the debtor which arose

postpetition, because the two obligations lack mutuality.");[6] In re

---

[5]The court confirmed the Debtors' First Amended Chapter 11
Plan by order filed June 24, 2010.

[6]In reaching its decision on mutuality, the court in Mohawk
noted that the Supreme Court had rejected the "separate entity"
theory as to the prepetition chapter 11 debtor and the
postpetition debtor, citing NLRB v. Bildisco & Bildisco, 465 U.S.
513, 104 S.Ct. 1188 (1984).  Mohawk, 82 B.R. at 177.  Rather, the
Mohawk court reasoned "To permit the setoff of prepetition debts
owed by the debtor against independent postpetition debts owed to
the debtor would be a complete frustration of any fresh start.
For our purposes in the present context, the right of the Debtor
to a fresh start makes the Debtor sufficiently distinct from its
former self so as to prevent the required mutuality."  Id.

Decision                              11

NTG Industries, Inc., 103 B.R. 195, 197 (Bankr. N.D. Ill. 1989).

The same conclusion also follows, independent of the common law mutuality requirement, from the express language of Bankruptcy Code § 553(a), which limits any right of setoff to a debt owing by the creditor "that arose before the commencement of the case" against a claim of such creditor "that arose before the commencement of the case." Collier, ¶ 553.03[3][g][i] at 553-44.

Centre Ins. Co v. SNTL Corp., 380 B.R. 204 (9th Cir. BAP 2007), aff'd 571 F.3d 826 (9th Cir. 2009), cited by Regal, is not to the contrary. Centre was not a setoff case. It merely held that, based on the broad definition of "claim" in Bankruptcy Code § 101(5)(A) (a "right to payment whether or not . . . liquidated, unliquidated, fixed, contingent . . . ), a creditor that incurred attorney's fees postpetition in defending the allowance of its unsecured claim could include the fees in the amount of its claim. The court reasoned "So long as the right to collect the fees existed pre-petition, the fact that the fees were actually incurred during the post-petition period is not relevant to the determination of whether the creditor has an allowable pre-petition claim for the fees." Id. at 220 (citations omitted).

Here, unlike in Centre, there was no challenge to the amount of Regal's claim against the estate. Moreover, the Debtors had no "right" under the Commercial Guaranties to collect attorneys fees from Regal at the date of the petition. And the operative acts that gave rise to the Debtors' right to attorney's fees - Regal's filing the adversary proceeding and the Debtors' prevailing therein - all

Decision                                    12

occurred after the filing of the petition.

Apart from the above, the Ninth Circuit noted in <u>Newbery</u> that "[t]he right of setoff is permissive, not mandatory; its application 'rests in the discretion of [the] court, which exercises such discretion under the general principles of [equity].'" <u>Newbery</u>, 95 F.3d at 1399 quoting <u>In re Cascade Roads</u>, 34 F.3d 756, 763 (9th Cir. 1994).

Here, it would be inequitable to permit Regal to set off the award of attorney's fees in favor of the Debtors against its claim in the Debtors' bankruptcy case. The purpose of the award is to reimburse the Debtors for their legal expenses in defending the adversary proceeding, as per the agreement of the parties. To deprive the Debtors of such reimbursement in exchange for a reduction in the amount of Regal's claim in the bankruptcy case would inequitably defeat the purpose of the award: according to the Debtors' Disclosure Statement filed May 16, 2010, the Debtors estimated that creditors holding general unsecured claims would receive a dividend of approximately 27.5%. Thus, allowing the setoff would be tantamount to allowing Regal to pay its liability to the Debtors for attorney's fees in "bankruptcy dollars," whereas had Regal prevailed, the Debtors would have had to pay Regal in 100% dollars.

The court holds that as a matter of law, and as an exercise of the court's discretion, Regal may not set off its liability to the Debtors for attorney's fees against its claim against the Debtors' bankruptcy estate.

Decision                                    13

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
1300 Clay Street (2d fl.)
Oakland, CA. 94612

3. <u>Amount of the Award</u>

Regal argues that the amount the Debtors' request for attorney's fees is unreasonable. Regal does not dispute the hourly rate being charged by the Debtors' special counsel, but does contend that the number of hours special counsel spent defending the adversary proceeding was excessive.

However, Regal has not identified any of special counsel's time entries that it contends are excessive, nor has it identified any tasks that special counsel should not have performed.

The court will overrule Regal's objection to the amount of attorney's fees requested by the Debtors.

C. <u>Conclusion</u>

The court requests special counsel for the Debtors to submit a proposed order within 10 days allowing attorney's fees as set forth in the Conclusion of the Debtors' Reply to Opposition to Motion for Attorney Fees, filed May 13, 2011.

**END OF ORDER**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
1300 Clay Street (2d fl.)
Oakland, CA. 94612

Decision                    14

COURT SERVICE LIST

2  Michael M. Feinberg, Esq.
   Karr Tuttle Campbell
3  1201 3rd Avenue, Suite 2900
   Seattle, WA 98101

4
   Stephen M. Judson, Esq.
5  Fitzgerald Abbott & Beardsley LLP
   1221 Broadway, 21st Floor
6  Oakland, CA 94612

7  Saied Kashani, Esq.
   800 West First Street, Suite 400
8  Los Angeles, CA 90012

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
1300 Clay Street (2d fl.)
Oakland, CA. 94612